NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

_____
: 
Natalie SLOAN,  :
      Plaintiff, :
:
   v. :
:   Civil No. 18-01154 (RBK)
COMMISSIONER OF SOCIAL :
SECURITY, :   **OPINION**
:
      Defendant. :
_____ :

**KUGLER**, United States District Judge:

    **THIS MATTER** comes before the Court upon the appeal of Natalie Sloan for review of the final decision of the Commissioner of Social Security. (Doc. No. 1). The Commissioner denied Plaintiff's application for Social Security Disability benefits, finding that Plaintiff was not disabled as defined by the Social Security Act. As explained below, the decision of the Commissioner is **AFFIRMED**.

   **I.**    **FACTS**

    **A. Procedural History**

    On November 26, 2013, Plaintiff protectively applied for disability insurance benefits, alleging disability beginning May 8, 2013. R. 165–66. Her application for benefits was initially denied on March 14, 2014, and again denied upon reconsideration on May 31, 2014. R. 73–90.

Plaintiff then filed a written request for a hearing. On June 3, 2016, the Administrative Law Judge ("ALJ"), presiding from Chicago, Illinois, held a video hearing, while Plaintiff appeared via telephone from her home in Egg Harbor Township, New Jersey. R. 23. In a decision dated September 22, 2016, the ALJ found that Plaintiff was not disabled. R. 20–34. On December 1, 2017, the Appeals Council denied her request for review. R. 1–7. Plaintiff then filed this action.

### B. Plaintiff's History

Plaintiff Natalie Sloan suffers from depression, severe anxiety, and agoraphobia. R. 25. Plaintiff completed her high school education. R. 41. In 2012, Plaintiff worked for two months as a stock clerk for Walmart doing inventory in a back room. R. 54. Plaintiff worked as a Wawa cashier beginning in May 2009 and was later promoted to shift manager before leaving the position in May 2012. R. 45. Plaintiff most recently worked from March to May of 2013 delivering newspapers for the *Philadelphia Inquirer*. R. 43. Plaintiff alleges she has been disabled since May 8, 2013. R. 165.

At her administrative hearing, Plaintiff testified that she was unable to work due to anxiety. R. 46. Plaintiff said that her anxiety is caused by fear of leaving her house and being in a social setting. R. 46. Plaintiff also testified that she experiences two to three intermittent panic attacks per week, with each lasting fifteen to thirty minutes. R. 46–47. After each panic attack, Plaintiff requires a few hours of recovery before resuming any social interaction. R. 47. Plaintiff testified that, for "more than a couple months," she had been unable to leave her house to go to the store or family events. R. 49. However, Plaintiff also testified she was able to drive a car to attend doctors' appointments once or twice a month and to go shopping "once every few months." R. 49–50. Plaintiff testified that she had difficulty dealing with other people, especially non-family members or people with whom she is not familiar. R. 50. Plaintiff also testified that

she avoids people and has difficulty with crowds, which she considers "two people or more." R. 51.

Plaintiff's parents, Bruce and Janeen Sloan, submitted a statement in support of Plaintiff's disability application. R. 260. According to her parents, Plaintiff was unable to attend most family functions or other events that required her to leave the house. R. 260. They stated that Plaintiff would only attend family functions if they were held at her grandparents' apartment, she knew who was going to be there, and Plaintiff drove by herself. R. 260. They stated that Plaintiff went shopping occasionally for personal items, but that she went at times when she could avoid crowds. R. 260. Plaintiff's parents reported that Plaintiff grew "emotionally distressed" before a scheduled shopping trip and that she would often cancel shopping trips and doctors' appointments at the last minute. R. 260. According to her parents, Plaintiff primarily stayed in her room and avoided people while at home. R. 260. Plaintiff's parents stated that she quit her job at Walmart because she had too much difficulty leaving the house. R. 260. Plaintiff also had difficulty leaving the house in her subsequent newspaper delivery job. R. 260.

### C. Plaintiff's Relevant Medical History

We now review Plaintiff's medical history before Lori C. Talbot, M.D. and Christianna R. Martin, LCSW. We then consider the consultative examination of J. Theodore Brown, Jr., Ph.D., followed by the reports of state agency reviewing physicians, Robert Campion, M.D. and Thomas Yared, M.D.

#### 1. Dr. Talbot – Primary Care

On January 13, 2014, Plaintiff saw her primary care physician, Lori C. Talbot, M.D., for a follow-up regarding her anxiety disorder. R. 283. Plaintiff reported that Zoloft was helping "a

very little bit," and that she was still really anxious in social situations. R. 283. Plaintiff still had not started counseling. R. 283. Dr. Talbot diagnosed hypothyroidism and social phobia/anxiety, increased Plaintiff's dosage of Zoloft, and advised Plaintiff to start counseling. R. 283.

On September 22, 2014, Plaintiff saw Dr. Talbot for a well-adult exam. R. 280. Plaintiff reported that she was still struggling with anxiety and she had not left the house in two weeks. R. 280. She had not yet been to see a psychiatrist. R. 280. A physical examination of Plaintiff was normal. R. 280–81. Dr. Talbot noted that Plaintiff was well oriented with intact judgment and insight. R. 281. She strongly recommended that Plaintiff make an appointment with a psychiatrist. R. 282.

On October 30, 2014, Plaintiff saw Dr. Talbot to request that she complete disability paperwork. R. 278. Plaintiff reported that she only left the house once a week or less due to anxiety. R. 278. She reported that she had to enter Dr. Talbot's office through the back door. R. 278. Plaintiff had still not been to see a counselor. R. 278. Dr. Talbot diagnosed anxiety disorder not otherwise specified. R. 279. Dr. Talbot told Plaintiff that she would not agree to complete disability paperwork until Plaintiff saw a psychiatrist and received professional help for her social anxiety. R. 279.

On January 20, 2015, Dr. Talbot completed a Medical Source Statement in which she opined that Plaintiff had "unlimited or very good" ability to understand, remember, and carry out very short and simple instructions as well as detailed instructions, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, deal with the stress of semiskilled and skilled work, adhere to basic standards of neatness and cleanliness, maintain socially appropriate behavior, and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. R. 284–85. She opined that Plaintiff had

"limited but satisfactory" ability to deal with normal work stress. R. 284. Dr. Talbot opined that Plaintiff was "seriously limited" in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to respond appropriately to changes in a routine work setting. R. 284. She opined that Plaintiff was "unable to meet competitive standards" with regard to her ability to work in coordination with or proximity to others without being duly distracted, interact appropriately with the general public, travel in unfamiliar places, and use public transportation. R. 284–85. Dr. Talbot opined that Plaintiff would, on average, miss more than four days of work per month. R. 285. She opined that Plaintiff could manage benefits in her own best interest. R. 285.

### 2. Ms. Martin – Counseling

On January 15, 2015, Plaintiff began counseling with Christianna R. Martin, LCSW. R. 293. Plaintiff complained of self-isolation spanning the past two years as well as lifelong anxiety and depression. R. 293. Ms. Martin diagnosed anxiety disorder with agoraphobia. R. 293. On May 21, 2015, Plaintiff oddly reported that she had "started a job" at a neighborhood nursery. R. 294. On June 4, 2015, Plaintiff reported that she was still working for the neighborhood nursery and she was able to shop at the mall. R. 294. On December 1, 2015, Plaintiff reported that she was no longer working for the neighborhood nursery and she was trying to find another job but believed her anxiety precluded her from working any other jobs. R. 296. On March 22, 2016, Plaintiff told Ms. Martin that she had a significant setback over the last month, and she asked Ms. Martin to complete disability paperwork for her. R. 296.

On March 22, 2016, Ms. Martin completed a Medical Source Statement. R. 287. Ms. Martin reported that she had been seeing Plaintiff for individual therapy sessions on a bi-weekly basis since January 15, 2015. R. 287. Plaintiff's diagnosis was generalized anxiety disorder R.

287. Ms. Martin indicated that Plaintiff was making positive gains but had experienced repeated setbacks. R. 287. Plaintiff was motivated, but her anxiety interfered with her treatment. R. 287. Ms. Martin noted that Plaintiff had periods of agoraphobia, depressed mood, excessive worry, feeling worthless, difficulty making decisions, inconsistent ability to manage social interactions, difficulty making appointments, and dissociation during panic attacks. R. 287. She rated Plaintiff's prognosis as "fair." R. 287.

Ms. Martin opined that Plaintiff had "limited but satisfactory" ability to understand, remember, and carry out very short and simple instructions, ask simple questions or request assistance, and adhere to basic standards of neatness and cleanliness. R. 289–90. She opined that Plaintiff was "seriously limited" in her ability to remember work-like procedures, maintain attention for two-hour segments, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, carry out detailed instructions, and set realistic goals or make plans independently of others. R. 289–90. She opined that Plaintiff was "unable to meet competitive standards" in her ability to maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, understand and remember detailed instructions, deal with stress of semiskilled and skilled work, and maintain socially appropriate behavior. R. 289–90. She opined that Plaintiff possessed "no useful ability to function" in getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, being aware of normal hazards and taking appropriate precautions, interacting appropriately with the general public,

travelling in an unfamiliar place, or using public transportation. R. 289–90. Ms. Martin indicated that Plaintiff did not have a low IQ or reduced intellectual functioning. R. 290. She opined that Plaintiff would find almost all aspects of work to be stressful. R. 291. Ms. Martin opined that Plaintiff would miss more than four days of work per month. R. 291. However, Ms. Martin believed that Plaintiff could manage benefits in her own best interest. R. 292.

### 3. Consultative Psychological Examination

On January 30, 2014, J. Theodore Brown, Jr., Ph.D. performed a consultative psychological examination. R. 273. Plaintiff drove herself to the examination. R. 273. Plaintiff reported that she had a high school level education of combined regular and special education classes. R. 273. She indicated that she was most recently employed doing newspaper delivery for two months, but she left because the contract ended. R. 273. She denied any history of psychiatric hospitalizations. R. 273. Plaintiff stated that at one point in time she was being seen for anxiety on a weekly basis, but she did not remember when or for how long. R. 273. Dr. Brown noted that she was a "poor historian" and that Plaintiff was not receiving any mental healthcare support or treatment at the time of the examination. R. 273.

Plaintiff complained that she was depressed and unable to leave the house due to anxiety. R. 274. She denied any suicidal ideation or crying episodes. R. 274. On a mental status examination, Plaintiff was pleasant and cooperative. R. 274. Her hygiene was adequate, and her eye contact was appropriate. R. 274. Plaintiff's speech was fluent and clear, her thought processes were coherent and goal-directed, her affect was appropriate, and her mood was neutral. R. 275. Plaintiff was fully oriented, her intellectual functioning was estimated to be below average, and her insight was fair. R. 275.

Plaintiff reported to Dr. Brown that she lived with her parents and could dress, bathe, and groom herself. R. 275. Her mother did the cooking, cleaning, laundry, and shopping. R. 275. Plaintiff could drive, her mother managed her money, she had friends, and her family relationships were okay. R. 275. Plaintiff's hobbies were spending time at home in her room, watching television, doing puzzles, and coloring. R. 275.

Dr. Brown diagnosed depressive disorder, not otherwise specified; ruled out psychosis, not otherwise specified; and diagnosed learning disorder, not otherwise specified. R. 276. He felt that Plaintiff's prognosis was dependent upon her receiving and being able to benefit from appropriate mental health support and treatment and being able to find opportunities that accommodated what appeared to be a significant learning disability. R. 276. Dr. Brown opined that Plaintiff appeared to be intellectually deficient and should not be allowed to manage her own funds. R. 276.

### 4. State Agency Reviewing Physicians

On March 13, 2014, Robert Campion, M.D., reviewed Plaintiff's medical records to date and opined that she had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. R. 76. Dr. Campion opined that Plaintiff was capable of performing simple work and would be able to adapt to normal changes in a work setting with limited contact with the public. R. 79. Dr. Campion noted that Plaintiff was able to work as a manager in a convenience store for three years, albeit with frequent absences as self-reported, and that she stopped working as a newspaper deliverer because her contract ended rather than because of her agoraphobia. R. 79. Dr. Campion also noted that Plaintiff's mother reported that Plaintiff was able to drive her sisters to and from work. R. 79.

On May 31, 2014, Thomas Yared, M.D., reviewed Plaintiff's medical records to date and opined that she had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. R. 86. Dr. Yared concurred with Dr. Campion's opinion that Plaintiff would be capable of performing simple work involving limited contact with the public. R. 88.

### D. Adult Function Reports

#### 1. Plaintiff's Adult Function Report

In her Adult Function Report of December 14, 2013, Plaintiff reported that she lived in a house with her family. R. 209. Plaintiff was able to care for her cat and prepare simple meals for herself occasionally. R. 210–11. Plaintiff reported that she was able to engage in household chores by cleaning the floors, doing laundry, mowing the lawn, and pulling weeds. R. 211. She also reported that on a "bad day" she "need[s] a push to get up and perform a task." R. 211. While Plaintiff indicated that she was able to drive a car and leave the house by herself, she claimed that she did not leave the house unless it was an emergency or if she had an appointment. R. 212. Plaintiff reported that she only shopped by computer for personal necessities and gifts. R. 212. Plaintiff stated that she was able to pay bills, count change, and use a checkbook/money order, but that she could not handle her savings because she had difficulty saving money. R. 212. Though Plaintiff reported that she spent time with others, she stated that she did not do so often, and rarely in person. R. 213. She also rarely left the house; when she did, it was for no longer than a few hours. R. 213. Plaintiff reported that her conditions prevented her from maintaining a social life, as she only went out or left the house to see family. R. 213.

#### 2. Mrs. Sloan's Third Party Adult Function Report

Plaintiff's mother completed a Third Party Adult Function Report dated December 14, 2013. R. 193. Plaintiff's mother reported that Plaintiff lived at home and her regular activities included feeding the cat and cleaning the litter box, using a computer, and cleaning up around the house or doing chores. R. 193–94. Plaintiff needs reminders to bathe and change her clothes. R. 194–95. According to Plaintiff's mother, Plaintiff was able to prepare simple meals, wash clothes, cut the grass, clean floors, dust, and wash dishes. R. 195. While Plaintiff usually completes these chores on her own, she sometimes needs to be reminded to complete them. R. 195–96. Plaintiff went outside to get the mail every day. R. 196. Plaintiff drove a car, preferred going places alone, and always drove herself so that she could leave when she needed. R. 196. Plaintiff shopped for clothes by computer and relied on her parents to purchase her personal items. R. 196. According to Plaintiff's mother, Plaintiff could not handle a savings account, and Plaintiff often overdrew her accounts even during the time that she was working. R. 196. Plaintiff enjoys watching TV, going on the computer, sewing, doing puzzles, and repairing broken items. R. 197. Plaintiff's mother reported that Plaintiff occasionally attended family gatherings so long as she could drive herself and had the freedom to leave if needed. R. 197. Plaintiff regularly transported her sisters to and from work. R. 197. Plaintiff's mother also reported that Plaintiff has always been anxious about going places and not being able to leave and that Plaintiff does not like to be away from home for long periods of time. R. 198–99.

### E. The Vocational Expert's Testimony

At Plaintiff's administrative hearing, the vocational expert ("VE") testified that Plaintiff's past job at Walmart was classified in the *Dictionary of Occupational Titles* ("DOT") as the position of "stock selector" and was medium exertion. R. 55. Her past relevant work as a Wawa cashier was classified as a "food sales clerk" and was light exertion. R. 55. The ALJ asked the

VE to consider a hypothetical individual with Plaintiff's vocational characteristics who was limited to simple work with occasional superficial contact with coworkers and the supervisors and no contact with the general public. R. 58. The VE testified that the individual would be capable of performing Plaintiff's past relevant work as a stock clerk. R. 58. The ALJ then asked the VE to consider a second hypothetical individual with the same limitations as the first, but who also required an unscheduled break lasting a couple of hours approximately two to three times per week. R. 58. The VE testified that, with these additional restrictions, the individual would not be capable of competitively performing Plaintiff's past relevant work as a stock clerk. R. 58. Finally, the ALJ asked the VE to consider a third hypothetical individual with the same limitations as the first, imposing an additional limitation that the individual could only leave home at most a couple of times a month. R. 58–59. The VE testified that, with this additional limitation, the individual would not be capable of performing Plaintiff's past relevant work as a stock clerk. R. 59.

### F. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on September 22, 2016. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of May 8, 2013, through her date last insured of June 30, 2014. R. 25. Second, the ALJ determined that Plaintiff had the severe impairments of anxiety disorder and affective disorder, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. R. 25. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that she was limited to doing

simple work with only occasional superficial interaction with co-workers and supervisors, and none with the general public. R. 27. The ALJ then relied on the VE's testimony, who concluded that Plaintiff could perform her past relevant work as a stock selector. R. 29. Therefore, the ALJ found that Plaintiff was not disabled under the Act at any time during the relevant period. R. 29.

## II. LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (superseded by statute on other grounds). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health &*

*Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520(a)(4).

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical or mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other

available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff makes three sets of arguments. Plaintiff argues that the ALJ did not give proper weight to Plaintiff's treating sources for their opinions on Plaintiff's abilities and restrictions. Plaintiff also argues that the ALJ failed to fully consider "other sources" to determine Plaintiff's RFC. Finally, Plaintiff argues the ALJ's hypothetical question to the VE on which the ALJ relied in finding Plaintiff is not disabled did not contain all of Plaintiff's limitations.

### A. Whether the ALJ's RFC Determination Is Supported by Substantial Evidence

Plaintiff argues that the ALJ inadequately weighed the medical and nonmedical evidence for Plaintiff's ability to function and thus misrepresented her RFC to maintain employment. First, Plaintiff argues that the ALJ did not give the opinions of her treating physician and relevant "other source" evidence the proper weight as should have been awarded in accordance with 20 C.F.R. § 404.1527. Second, Plaintiff argues that the ALJ failed to fully review nonmedical evidence as required by SSR 85-16. On both points, the Court finds no such error.

#### 1. The ALJ's weighing of treating sources

An ALJ has a duty to consider all medical evidence placed before him and must provide an adequate reason for dismissing or discarding evidence. *Akers v. Callahan*, 997 F. Supp. 648, 653 (W.D. Pa. 1998) (citing *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984)). An ALJ must resolve conflicts in the evidence and cannot rely on a "single piece of evidence" that "will not satisfy the substantiality test." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). As a general matter, an ALJ must give more weight to the opinions of examining physicians over non-examining physicians, but "[a]n ALJ can reject a treating physician's opinion, and thus obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported

by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record." *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citing *Kreuzberger v. Astrue*, No. 07-529, 2008 WL 2370293, at *4 (W.D. Pa. June 9, 2008) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2))). Ultimately, "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (*Cotter I*).

20 C.F.R. § 404.1527(c) sets forth factors to consider in determining how to weigh evidence from medical sources, including: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. *See Labanda v. Comm'r of Soc. Sec.*, No. 17-3354, 2018 WL 259948, at *1 (D.N.J. Jan. 2, 2018); *see also Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 172 (3d Cir. 2016) (noting that "the weight due a medical opinion depends on a variety of factors" under 20 C.F.R. § 404.1527(c)). An ALJ need not explicitly discuss each factor in his decision. *See Green v. Colvin*, No. 13-03463, 2014 WL 3105037, at *7 (D.N.J. July 2, 2014). "Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Comm'r of Soc. Sec.*, No. 17-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066).

Here, the ALJ gave little weight to the opinions of Dr. Talbot and Ms. Martin because he found them to be inconsistent with each other and with Plaintiff's actual functioning. R. 28. The ALJ noted that Dr. Talbot's opinion that Plaintiff's condition causes severe anxiety upon leaving

the house or traveling was inconsistent with the record evidence showing Plaintiff's ability to leave the house to transport her sisters to and from work, attend medical appointments, go to court, and attend family events. R. 28. The ALJ also noted significant discrepancies between the Medical Source Statements of Dr. Talbot and Ms. Martin. While Dr. Talbot opined that Plaintiff had an "unlimited or very good" ability and aptitude to do skilled and semiskilled work, Ms. Martin believed Plaintiff to be "unable to meet competitive standards" in these categories. R. 28. And while Dr. Talbot opined that Plaintiff had an "unlimited or very good" ability to get along with co-workers and peers, Ms. Martin believed Plaintiff had "no useful ability to function" in this area. R. 28.

Plaintiff argues that the ALJ erred by failing to discuss the consistent portions of the opinions of Dr. Talbot and Ms. Martin before assigning lesser weight to these opinions. Pl.'s Br. at 11. But an ALJ need not "make reference to every relevant treatment note" so long as he considers all relevant evidence in determining a claimant's RFC. *See Fargnoli*, 247 F.3d at 42. The ALJ generally gave little weight to the opinions of Plaintiff's treating sources and gave great weight to the opinions of the state agency medical and psychological consultants, providing reasoned explanations for assigning such weight. R. 28. While the state agency consultants found that Plaintiff could complete work with no physical limitations and simple work with limited contact with the public, the ALJ found "the evidence is consistent with the residual functional capacity that specifies only occasional superficial interaction with co-workers and supervisors, and none with the general public." R. 28. For example, the ALJ noted that Ms. Martin's treatment notes stated that Plaintiff "started a job at [the] neighborhood nursery." R. 28. After considering all relevant evidence, including the consistent portions of Dr. Talbot's and

Ms. Martin's opinions, the ALJ determined that substantial evidence supported imposing additional RFC limitations. This Court thus finds Plaintiff's argument unpersuasive.

### 2. The ALJ's weighing of nonmedical sources

The ALJ's duties are well-settled. The determination of a claimant's disability is reserved for the ALJ. 20 C.F.R. § 404.1527(d)(1). The ALJ is responsible for "evaluat[ing] all relevant evidence and to explain the basis of his conclusions." *Fargnoli*, 247 F.3d at 40. If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter I*, 642 F.2d at 706–07. The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (*Cotter II*); *see also Fargnoli*, 247 F.3d at 42 (noting that an ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records").

The ALJ may use evidence from "other sources," to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6.

Here, the evidence in the record from Plaintiff's parents is substantially cumulative of other record evidence, including the Adult Functioning Report of Plaintiff's mother and the opinion of Ms. Martin. The ALJ considered the Third Person Adult Functioning Report provided by Plaintiff's mother, which largely reiterates the statement provided by Plaintiff's parents

concerning Plaintiff's ability to drive herself places alone and attend family events. R. 196–97, 260. The ALJ also considered the Medical Source Statement of Ms. Martin, which reiterates the statement by Plaintiff's parents indicating that Plaintiff cancels or fails to make appointments. R. 260, 287. The ALJ provided detailed reasoning for giving little weight to Plaintiff's mother's function report and Ms. Martin's opinion as support for the alleged severity of Plaintiff's symptoms. R. 28.

Further, the ALJ's decision states that it is based on "careful consideration of all the evidence," R. 23, and provides extensive factual foundations for the findings, R. 25–29. Because Plaintiff's parents' statement is substantially cumulative of other record evidence which the ALJ considered and found inconsistent, and the ALJ carefully considered all of the evidence, it is clear from the ALJ's discussion that he would have deemed the objective medical and other evidence in the record to be inconsistent with Plaintiff's parents' statement. Where the ALJ's decision is sufficient "to evaluate whether substantial evidence supports the ALJ's determination," a reviewing court will find no reversible error. *Sharp v. Astrue*, 228 F. App'x 228, 230 (3d Cir. 2007).

### B. Whether the ALJ's Hypothetical Question Is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by relying on the VE's response to a hypothetical posed that did not contain all of Plaintiff's limitations in finding that Plaintiff was not disabled. "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Under the Social Security regulations, 'a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous

work.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting 20 C.F.R. § 404.1560(b)(2)).

Although an ALJ's "hypothetical question posed to a vocational expert 'must reflect all of a claimant's impairments,'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)), an ALJ need not submit to the VE "every impairment *alleged* by a claimant," *Rutherford*, 399 F.3d at 554 (emphasis in original). While hypothetical questions posed to a VE should include even mild functional limitations, *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2), the ALJ "is not required to submit to the VE claimed limitations that have been 'reasonably discounted' because they are: (1) not supported by objective medical evidence; (2) contradicted by the claimant's medical records; or (3) contradicted by the claimant's own testimony." *Nichols v. Colvin*, No. 14-2172, 2015 WL 2417584, at *8 (E.D. Pa. May 14, 2015) (citing *Rutherford*, 399 F.3d at 554–56). "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible." *Rutherford*, 399 F.3d at 554. And credibility determinations are to be made by the ALJ. *See generally* 20 C.F.R. § 404.1527.

Plaintiff argues that the first hypothetical question posed by the ALJ "did not adequately describe [Plaintiff's] ability to function without informing the VE to give consideration for the effects as described by the plaintiff's treating sources." Pl.'s Br. at 9. But because Plaintiff's argument hinges on the errors alleged and rejected above, this argument fails too. The ALJ found that "the medical evidence does not support the alleged severity of symptoms" and that "the evidence does not support the allegations that Plaintiff never or rarely leaves the house." R. 28. The ALJ gave little weight to the opinions of Plaintiff's treating sources due to inconsistency between them and with Plaintiff's actual functioning. R. 28. In making his ultimate disability

determination, the ALJ did not rely on the VE's answers to his second and third hypotheticals, which included limitations based on the aforementioned inconsistent evidence. *See* R. 58–59. Thus, the ALJ "reasonably discounted" Plaintiff's claimed limitations as being contradicted by other evidence in the record. *See Rutherford*, 399 F.3d at 555.

## IV. CONCLUSION

For the reasons discussed above, this Court will **AFFIRM** the Commissioner's decision.

Dated: 02/28/2019                                                s/ Robert B. Kugler

                                                                                                                                  ROBERT B. KUGLER

                                                                                                                                  United States District Judge